1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

**United States District Court**
For the Northern District of California

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| ADVENT, INC., a California corporation, | Case No.: 13-CV-00561-LHK |
| Plaintiff, | |
| v. | ORDER GRANTING MOTION TO REMAND |
| NATIONAL UNION FIRE INSURANCE COMPANY OF PITTSBURGH, PA., a Pennsylvania corporation, | |
| Defendant. | |

Plaintiff Advent, Inc. ("Advent") brings this insurance coverage action against Defendant National Union First Insurance Company of Pittsburgh ("National Union") seeking declaratory relief. Before the Court is Advent's Motion to Remand the instant case to state court. Defendant National Union opposes. The Court finds this matter appropriate for determination without oral argument and hereby VACATES the hearing set for July 11, 2013. *See* Civil L.R. 7-1(b). Having reviewed the parties' submissions and the relevant law, the Court GRANTS Advent's Motion to Remand.

I.       **BACKGROUND**

A.       **The Insurance Contract Dispute**

The matter before the Court arises out of a construction project to build an apartment complex. First Am. Compl. ¶ 6 ("FAC"), ECF. No. 19. Plaintiff Advent, Inc., the contractor on

1

the construction project, entered into an agreement with a subcontractor, Pacific Structures ("Pacific"). FAC, Ex. A. Advent alleges that certain provisions in its contract with Pacific required Pacific to obtain general liability insurance of $1,000,000 and to insure Advent as an additional insured. FAC ¶ 6; *id.*, Ex. A. Then, according to Advent, Pacific required that its own subcontractor, Johnson Western Gunite ("Gunite"), provide insurance certificates naming Advent as an additional insured. FAC ¶ 7.

Defendant National Union Fire Insurance Company of Pittsburgh issued two policies to Gunite: one general commercial liability policy and one "Umbrella Prime: Commercial Umbrella Liability Policy with CrisisResponse" policy ("Excess Policy"). FAC ¶¶ 9-11; *id.*, Exs. C, D. The general commercial liability policy has an occurrence limit of $1,000,000, FAC ¶ 9; *id.*, Ex. C, and the Excess Policy has an occurrence limit of $15,000,000, FAC ¶ 9; *id.*, Ex. D.

The only issue in the instant case concerns the Excess Policy. Advent's sole cause of action is for a declaratory judgment that it is an additional insured under the Excess Policy and is thus entitled to coverage. FAC ¶ 22.

### B.      The Underlying State Court Tort Action

The dispute before the Court came about as a result of serious injuries sustained by Jerome Kielty after a fall at the construction site for Advent's project. FAC ¶ 18. Mr. Kielty, through his guardian ad litem, Sherry Lynn Kielty, filed suit (the "*Kielty* Lawsuit") against Advent as well as other contractors and subcontractors in the Santa Clara County Superior Court for damages stemming from his injuries. FAC ¶ 18; *id.*, Ex. E.

On April 9, 2009, National Union filed a complaint-in-intervention in the *Kielty* Lawsuit seeking reimbursement from the defendants for benefits paid under a worker's compensation policy. *See* Pl.'s Req. for Judicial Notice ("RJN"), Ex. A, ECF No. 21-4.[1] The worker's compensation policy involved is unrelated to the Excess Policy at the center of the dispute between Advent and National Union. *See* ECF No. 22, at 6; ECF No. 25, at 5. National Union requested

---

[1] The parties rely upon and seek judicial notice for certain documents beyond the complaint. For the reasons discussed in Part III, the Court grants Defendants' Request for Judicial Notice ("RJN").

13-CV-00561-LHK
ORDER GRANTING MOTION TO REMAND

1    that the complaint-in-intervention be dismissed with prejudice on February 21, 2013. *See id.* Ex.

2    B, ECF No. 24-5.[2]

3           The parties to the *Kielty* Lawsuit have entered into a stipulated partial settlement agreement

4    under which payments were made to Mr. Kielty.  In turn, Mr. Kielty agreed to dismiss all claims

5    against Defendants with prejudice except for his claims against Advent.  *See* Woodward Decl. Ex.

6    1, § 3 ("Stipulated Settlement"), ECF No. 24-1.[3]  Pursuant to the settlement agreement, Mr. Kielty

7    and Advent agreed to stay the trial pending resolution of a declaratory judgment action against

8    National Union.  *Id.* § 3, ¶¶ j-k.  Additionally, Mr. Kielty agreed to pay all costs and fees of the

9    declaratory judgment action, and also agreed that he would dismiss all claims against Advent with

10   prejudice if Advent is determined not to be covered by the Excess Agreement.  *Id.* § 3, ¶ l, n.  If

11   there is a judicial determination that Advent is covered by the policy, "the stay of proceedings and

12   trial in the underlying action will be lifted and trial will proceed against Advent only."  *Id.* § 3, ¶ o.

13   According to Advent's counsel, the *Kielty* Lawsuit is in a "'quasi stay' whereby the [state court]

14   will hold periodic case management conferences with the purpose of evaluating the status of the

15   present coverage action."  Woodward Decl. ¶ 4, ECF No. 24.

16          **C.      Procedural Background of the Instant Case**

17          Advent initially brought this action against National Union on January 9, 2013, in the Santa

18   Clara Superior Court—the same court in which the *Kielty* Lawsuit is currently pending.  *See* Req.

19   for Judicial Notice in Supp. of Def.'s Opp'n to Mot. to Remand Ex. 1, ECF. No. 23-1.  In that

20   complaint, Advent requested the declaratory relief it currently seeks from this Court as well as

21   relief for a breach of contract claim.  *See id.*, Ex.1 (Compl. ¶¶ 19-27).

22          On February 7, 2013, National Union filed a notice of removal on the basis of diversity of

23   citizenship.  *See* ECF No. 1.  On February 14, 2013, National Union filed a motion to dismiss

24   Advent's complaint in its entirety, *see* Mot. Dismiss, ECF No. 10.  National Union withdrew this

25   motion on February 20, 2013.  *See* ECF. No. 13.  That same day, National Union filed an amended

26

27   [2] As of April 29, 2013, the docket report in the *Kielty* Lawsuit characterizes National Union's
     request for dismissal as "partial" 0452-000.  Pl.'s Supplemental Req. for Judicial Notice in Supp.

28   of Reply Mot. for Remand Ex. A, docket entry 0452-000, ECF No. 25-4.
     [3] National Union is also a signatory of the stipulated settlement agreement.  *See* ECF No. 24-1.

3

*United States District Court*
For the Northern District of California

1   motion to dismiss Advent's breach of contract claim, but not its declaratory judgment claim.  *See*

2   ECF No. 14.

3       On March 5, 2013, Advent and National Union filed a Stipulation and Proposed Order

4   regarding the filing of a first amended complaint ("FAC") and National Union's motion to dismiss.

5   ECF No. 16.  They stipulated that: (1) Advent would file a first amended complaint containing only

6   one cause of action for declaratory relief; (2) Advent's withdrawal of its cause of action for breach

7   of contract would be "done without prejudice to Advent's right to later assert this cause of action;"

8   (3) Advent's breach of contract cause of action would be "deemed dismissed without prejudice;"

9   and (4) National Union would withdraw its amended motion to dismiss Advent's breach of contract

10  cause of action.  *Id.* ¶¶ 1-3.  On March 5, 2013, this Court granted the parties' stipulated order.

11  ECF No. 17.  Advent filed its FAC on March 6, 2013.  ECF No. 19.  National Union filed its

12  answer on March 27, 2013, ECF No. 20, which it then amended on July 2, 2013, ECF No. 34.

13      On April 9, 2013, Advent filed the Motion to Remand that is presently before the court.

14  ECF No. 21 ("Mot.").  National Union filed its opposition to the motion on April 23, 2013, ECF

15  No. 22 ("Opp'n"), and then Advent filed its reply on April 30, 2013, ECF No. 25 ("Reply").[4]

16  **II.    LEGAL STANDARDS**

17      "Except as otherwise expressly provided by Act of Congress, any civil action brought in a

18  State court of which the district courts of the United States have original jurisdiction, may be

19  removed by the defendant . . . to the district court of the United States for the district and division

20  embracing the place where such action is pending."  28 U.S.C. § 1441(a).  Diversity of citizenship

21  of the parties under 28 U.S.C. § 1332(a) vests a district court with original subject matter

22  jurisdiction over a case, and thus represents a basis for removal.  *See* 28 U.S.C. § 1441(b).

23      Even when parties are diverse, however, a district court is not always required to assert

24  jurisdiction over a case once it is removed to federal court.  The Federal Declaratory Judgment Act

25  provides that, "[i]n a case of actual controversy within its jurisdiction . . . any court of the United

26

27  ──────────────

    [4]  In addition, on June 13, 2013, a third party, Topa Insurance Co., filed a motion to intervene and a
    complaint-in-intervention.  ECF No. 29.  Both Plaintiff and Defendant have filed non-opposition
28  statements to this intervention.  ECF No. 32-33.

States, upon the filing of an appropriate pleading, *may* declare the rights and other legal relations of any interested party seeking such a declaration, whether or not further relief is or could be sought." 28 U.S.C. § 2201(a) (emphasis added).  Though "a District Court cannot decline to entertain such an action as a matter of whim or personal disinclination," *Pub. Affairs Assocs., Inc. v Rickover*, 369 U.S. 111, 112 (1962) (per curiam), "[t]he exercise of jurisdiction under the Federal Declaratory Judgment Act, 28 U.S.C. § 2201(a), is committed to the sound discretion of the federal courts." *Huth v. Hartford Ins. Co. of the Midwest*, 298 F.3d 800, 802 (9th Cir. 2002) (citation omitted). "Even if the district court has subject matter jurisdiction, it is not required to exercise its authority to hear [a] case." *Id.* (citation omitted).  Congress, by instituting the Declaratory Judgment Act, "sought to place a remedial arrow in the district court's quiver; *it created an opportunity, rather than a duty*, to grant a new form of relief to qualifying litigants."  *Wilton v. Seven Falls Co.*, 515 U.S. 277, 288 (1995) (emphasis added).  Thus, if a court determines that its discretion is best exercised by declining to assert jurisdiction over a declaratory judgment case removed from state court on the basis of diversity of citizenship, it may remand the matter back to state court.  *See, e.g.*, *Huth*, 298 F.3d at 802, 804 (affirming a district court's order to remand a declaratory judgment action that had been removed under § 1332 back to state court after declining to exercise jurisdiction over the case).

In *Brillhart v. Excess Ins. Co. of America*, 316 U.S. 491 (1942), the Supreme Court "set[] forth the primary factors" that a district court should consider in exercising its discretion under Section 2201(a) of the Federal Declaratory Judgment Act.  *Huth*, 298 F.3d at 803.  "The district court should avoid needless determination of state law issues; it should discourage litigants from filing declaratory actions as a means of forum shopping; and it should avoid duplicative litigation." *Gov't Emps. Ins. Co. v. Dizol*, 133 F.3d 1220, 1225 (9th Cir. 1998) (en banc).  In conducting an analysis under *Brillhart*, district courts "[e]ssentially . . . 'must balance concerns of judicial administration, comity, and fairness to the litigants.'"  *Am. States Ins. Co. v. Kearns*, 15 F.3d 142, 144 (9th Cir. 1994) (quoting *Chamberlain v. Allstate Ins. Co.*, 931 F.2d 1361, 1367 (9th Cir. 1991)).

**United States District Court**
For the Northern District of California

1   Though the *Brillhart* factors "remain the philosophic touchstone for the district court,"

2   *Dizol*, 133 F.3d at 1225, they "are not necessarily exhaustive," *Huth*, 298 F.3d at 803 (citing

3   *Kearns*, 15 F.3d at 145 (Garth, J., concurring)).  Additional factors that courts have considered

4   include:

5   > [W]hether the declaratory action will settle all aspects of the controversy; whether
6   > the declaratory action will serve a useful purpose in clarifying the legal relations at
    > issue; whether the declaratory action is being sought merely for the purposes of
7   > procedural fencing or to obtain a "res judicata" advantage; or whether the use of a
    > declaratory action will result in entanglement between the federal and state court
8   > systems.  In addition, the district court might also consider the convenience of the
    > parties, and the availability and relative convenience of other remedies.
9
10  *Dizol*, 133 F.3d at 1225 n.5 (quoting *Kearns*, 15 F. 3d at 145 (Garth, J., concurring)).  None of

11  these considerations or the *Brillhart* factors is necessarily dispositive.  *See Huth*, 298 F.3d at 802-

12  03 (rejecting the argument that, because there was no pending state action, a federal district court

13  was precluded from exercising its discretion to decline jurisdiction over a declaratory action,

14  because "there are other balancing factors the district court must weigh").  Additionally, in spite of

15  courts' "substantial discretion in deciding whether to declare the rights of the litigants," *Wilton*,

16  515 U.S. at 286, a district court nevertheless "must make a sufficient record of its reasoning to

17  enable appropriate appellate review" if a party raises the issue, *Dizol*, 133 F.3d at 1225.

18  **III.   REQUEST FOR JUDICIAL NOTICE**

19   In connection with the Motion to Remand, Advent requests that, pursuant to Federal Rule

20  of Evidence 201, the Court take judicial notice of the following documents, which were filed in the

21  Underlying Action: (1) National Union's complaint-in-intervention in the *Kielty* Lawsuit, (2)

22  National Union's request for partial dismissal from the *Kielty* Lawsuit.  *See* RJN, ECF No. 21-3.

23  Likewise, in its Opposition to Advent's Motion to Remand, National Union requests that the Court

24  take judicial notice of the following documents: (1) Advent's complaint in this action filed in state

25  court.  *See* RJN Opp'n., ECF No. 23.  Finally, in its Reply, Advent also requests that the Court

26  take judicial notice of the following:  the register of actions from the *Kielty* Lawsuit.  Neither party

27  objects to the Court taking judicial notice of these exhibits.  *See* ECF No. 25-3.

6

A matter may be judicially noticed if it is either "generally known within the territorial jurisdiction of the trial court" or "can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned." Fed. R. Evid. 201(b). However, a court may not take judicial notice of a fact in the public record that is "subject to reasonable dispute." *Id.* In particular, "[w]hen a court takes judicial notice of another court's opinion, it may do so 'not for the truth of the facts recited therein, but for the existence of the opinion, which is not subject to reasonable dispute over its authenticity.'" *Lee v. City of L.A.*, 250 F.3d 668, 690 (citation omitted).[5]

Accordingly, the Court GRANTS both parties' Requests for Judicial Notice.

## IV.   DISCUSSION

### A.   Avoiding Needless Determination of State Law Issues

With regard to the first factor of the *Brillhart* analysis, Advent contends that "this declaratory relief action over insurance coverage seeks resolution of matters solely pertaining to state law, and thus weighs in favor of abstention." Mot. at 7. If this Court were to rule on Advent's claim for declaratory relief, Advent argues, "the Court [would] have to immerse itself in purely state insurance law concepts." *Id.* In response, National Union argues that "[t]his Court has the same ability as the state court 'to settle all aspects of the controversy' and 'clarify[] the legal relations at issue.'" Opp'n at 5 (alteration in original).

"Where . . . the sole basis of jurisdiction is diversity of citizenship, the federal interest is at its nadir. Thus, the *Brillhart* policy of avoiding unnecessary declarations of state law is especially strong [in this circumstance]." *Cont'l Cas. Co. v. Robsac Indus.*, 947 F.2d 1367, 1371 (9th Cir. 1991), *overruled on other ground by Dizol*, 133 F.3d at 1227. In evaluating this factor, the Court finds the Ninth Circuit's decision in *Huth v. Hartford Insurance Co. of the Midwest*, 298 F.3d 800 (9th Cir. 2002), to be instructive. In *Huth*, Hartford Insurance Company ("Hartford") filed first in federal court seeking a declaration that Huth, an individual injured in an automobile accident, was

---

[5] In *Lee*, the reviewing court found that the district court was correct in taking judicial notice of "the *fact* of the extradition hearing, the *fact* that a Waiver of Extradition was signed by [Plaintiff] and the *fact* that [Plaintiff] purportedly waived his right to challenge his extradition . . . ." *Lee*, 250 F.3d at 690 (emphasis in original). However, the district court erred by taking judicial notice of disputed facts underlying those documents by, for example, presuming the validity of the waiver of extradition which Plaintiff was challenging. *Id.*

United States District Court
For the Northern District of California

not entitled to insurance coverage.  298 F.3d at 802.  Huth then filed a similar action for

declaratory relief in state court.  *Id.*  Hartford then, on the basis of diversity jurisdiction, removed

the state action to federal court where the two cases were consolidated.  *Id.*  Once in federal court,

Hurth filed a motion to remand to state court and to stay Hartford's federal action.  *Id.*  The district

court granted the defendant's motion to remand, declining to exercise its jurisdiction under 28

U.S.C. § 2201(a).  *Id.* In doing so, the district court "held that state court would be the preferable

forum," because "both the federal and state actions involve the same purely state law issue." *Id.* at

804.  The Ninth Circuit affirmed the district court's decision, even though "there [was] no great

need for state court resolution of an open question of state law in the case."  *Id.*

        In the instant case, the first *Brillhart* factor weighs in favor of remanding the matter to state

court.  First, the dispute before the Court involves purely a question of state insurance law, which is

"an area that Congress has expressly left to the states through the McCarran-Ferguson Act."

*Robsac*, 947 F. 2d at 1371 (citing 15 U.S.C. § 1011-12 (1988)); *see Emp'rs Reinsurance Corp. v.*

*Karussos* 65 F.3d 796, 799 (9th Cir. 1995) ("The states regulate insurance companies for the

protection of their residents, and state courts are best situated to identify and enforce the public

policies that form the foundation of such regulation."), *overruled on other grounds by Dizol*, 133

F.3d at 1227.  It follows that, as in *Huth*, the controversy before the Court is one that can be fully

resolved through the application of state law, requiring an analysis of California law that the state

courts are well positioned to perform.  *Cf. Am. Nat'l Fire Ins. Co. v. Hungerford*, 53 F.3d 1012,

1018 (9th Cir. 1995) (holding that, because state courts were "equally, if not better equipped to

decide" questions of state law that would resolve both a federal declaratory judgment action and an

underlying state court action, the district court should have declined to exercise jurisdiction over

the declaratory judgment matter), *overruled on other grounds by Dizol*, 133 F.3d at 1227.

Moreover, California law provides a declaratory remedy similar to 28 U.S.C. § 2201(a).  *Compare*

28 U.S.C. § 2201 (creating a right of action to have a federal district court declare "the rights and

other legal relations of any interested party seeking such declaration"), *with* Cal. Civ. Proc. Code §

1060 (West 2013) (providing a right of action in California Superior Court to obtain a declaration

of, *inter alia*, one's "rights or duties with respect to another" pursuant to an agreement with another

8

party).  Consequently, though this Court is *capable* of analyzing the dispute between the parties under California law, state court is the *preferable* forum for this case as far as the first *Brillhart* factor is concerned.  The state courts are well equipped to issue a declaratory judgment on a matter that turns solely on questions of state contract and insurance law.

> **B.    Discouraging Litigants from Filing Declaratory Actions as a Means of Forum Shopping**

The second *Brillhart* factor "usually is understood to favor discouraging an insurer from forum shopping," but not in every case.  *See Am. Cas. Co. of Reading, Pa. v. Krieger*, 181 F.3d 1113, 1119 (9th Cir. 1999) (affirming the district court's exercise of jurisdiction over an insurance company's declaratory relief claim in order to prevent "'the [d]efendants, who [did] not fare[] well in the three summary judgments in this action, from wiping the slate clean and starting this litigation anew in state court on the eve of their federal court trial'" (citation omitted)).  Other considerations may tip the balance of the second *Brillhart* factor in one party's direction.  If a claim for declaratory relief is "defensive or reactive"—for example, if an insurer brings a declaratory judgment action in federal court to obtain a ruling as to its obligations under a policy at the center of an underlying state court dispute, which, for a variety of reasons, the insurer could not remove from state court—it may be indicative of forum shopping.  *Robsac*, 947 F.2d at 1371.  Additionally, to determine to which party the second *Brillhart* factor tips, courts have looked to whether the declaratory relief action could have been filed in state court and "coordinated with the pending state court actions."  *See Great Am. Assurance v. McCormick*, No. 05-02175, 2005 WL 3095972, *2 (N.D. Cal. Nov. 15, 2005) (citing *Polido v. State Farm Mut. Auto. Ins. Co.*, 110 F.3d 1418, 1423 (9th Cir. 1997)).

Regardless of these considerations, the forum shopping factor may not weigh in favor of either party if both the plaintiff and the defendant merely seek a strategic advantage.  For example, in *Huth*, the Ninth Circuit affirmed the district court's exercise of its discretion to decline jurisdiction in a declaratory judgment action even though "[t]he district court . . . found that 'avoiding forum shopping' favored neither party, noting that [one party] merely preferred state resolution while [the other party] preferred federal resolution."  298 F.3d at 804.  The fact that one

1   party filed first in federal court did not sway the Ninth Circuit in its direction.  The *Huth* Court

2   noted that, while "'federal courts should generally decline to entertain reactive declaratory

3   actions,'" *id.* (quoting *Dizol*, 133 F.3d at 1225), "there is no question that both parties seek

4   declaratory relief, and the fact that [one party] won the race to the courthouse . . . does not place it

5   in a preferred position," *id.*  Consequently, the Ninth Circuit concluded that the district court did

6   not abuse its discretion in finding that the second *Brillhart* factor favored neither party.  *Id.*

7            Here, both Advent and National Union appear to seek a strategic advantage, as parties to

8   litigation are prone to do.  National Union admitted as much at its meet-and-confer with Advent to

9   discuss potentially remanding this case to state court.  *See* Chaney Decl. July 11, 2013 ¶¶ 2-4, ECF

10   No. 21-1 (stating, according to Advent's counsel, that National Union "'insists it stay in Federal

11   Court for strategic reasons'").  As for the Plaintiff, Advent would not have brought this action in

12   state court if it found federal court to be a more hospitable forum.  Furthermore, as National Union

13   contends, *see* Opp'n Mot. Remand at 5 ("The only logical conclusion is that Advent offered to

14   dismiss that unripe [breach of contract] claim not in the interest of justice, but solely to create

15   grounds for a motion to remand based on discretionary jurisdiction."), it is possible Advent agreed

16   to dismiss its breach of contract claim in order have this case remanded to state court.  The Court

17   cannot say that one party is more culpable that the other in terms of forum shopping.  Both appear

18   to have made strategic choices throughout the course of this litigation to, in the parties' judgment,

19   gain an advantage in this litigation.  Though the fact that the declaratory relief sought here may

20   also be obtained in state court provides parties with the opportunity to engage in forum shopping,

21   the Court is unwilling to give great weight to this consideration with regard to the second *Brillhart*

22   factor.  To automatically close the door to federal court in order to avoid forum shopping in

23   declaratory judgment actions, merely because state courts make declaratory relief available, would

24   deplete the broad discretion district courts have in determining whether to retain jurisdiction under

25   28 U.S.C. § 2201(a).

26            Consequently, the Court finds that the best course of action with regard to the second

27   *Brillhart* factor is to follow the Ninth Circuit's decision in *Huth* and find that both parties' strategic

28   maneuvers in the course of this litigation offset each other.  Advent prefers state court resolution of

13-CV-00561-LHK
ORDER GRANTING MOTION TO REMAND

1    this matter while National Union prefers federal court resolution. *Cf. Huth*, 298 F.3d at 804.

2    Because of the considerations discussed *supra*, and because both parties have jockeyed to move

3    this case to a strategically advantageous forum, the Court finds that the second *Brillhart* factor

4    favors neither party.

5         **C.    Avoiding Duplicative Litigation**

6         Advent contends that "[t]he third *Brillhart* factor also leans toward abstention because the

7    state court already is familiar with the parties and the underlying issues. Although the legal issues

8    are not identical, the state court may be in a better position to coordinate a global settlement of both

9    actions." Mot. at 8. Moreover, Advent asserts that, for this factor to weigh in its favor, the *Kielty*

10   Lawsuit "need not involve the same parties or issues" because "the *Kielty* [Lawsuit] and this action

11   arise from the same factual circumstances." Reply at 4, 6. Specifically, both lawsuits arise from

12   the personal injury action and involve disputes about whether Advent is entitled to coverage for

13   losses relating to those injuries." *Id*. at 6.

14        National Union, in contrast, points out that "Advent initiated a separate lawsuit to

15   adjudicate its coverage claims, and expressly agreed to stay the [*Kielty* Lawsuit] until those claims

16   are determined." Opp'n at 5-6. As a result, National Union asserts, "there were always going to be

17   two separate actions; this coverage action, followed by the [*Kielty* Lawsuit] (if necessary)," which

18   "will be litigated separately and sequentially, even if they proceed in the same forum." *Id*. at 4, 6.

19   While National Union concedes that "the state court is clearly familiar with the issues in the [*Kielty*

20   Lawsuit]," National Union nevertheless maintains that the state court "has no familiarity with the

21   issues now pending before this Court." *Id*. at 6.

22        "If there are parallel state proceedings involving the same issues and parties pending at the

23   time [a] federal declaratory action is filed, there is a presumption that the entire suit should be

24   heard in state court." *Dizol*, 133 F.3d at 1225 (citation omitted). Similarly, if a declaratory

25   judgment claim that only involves questions of state law is brought "during the pendency of a

26   related state court proceeding," then "practicality and wise judicial administration considerations

27   generally counsel against the exercise of federal-court jurisdiction." *Golden Eagle Ins. Co. v.*

28

**United States District Court**
For the Northern District of California

11

13-CV-00561-LHK
ORDER GRANTING MOTION TO REMAND

*Travelers Cos.*, 103 F.3d 750, 754 (9th Cir. 1996) (internal quotation marks and citations omitted), *overruled on different grounds by Dizol*, 133 F.3d at 1227.

However, the existence of a pending state court action does not require that a district court abstain from exercising its jurisdiction over a declaratory action, *Dizol*, 133 F.3d at 1225 (citation omitted), nor does "the Declaratory Judgment Act require[] a parallel state proceeding in order for the district court to exercise its discretion to decline to entertain [an] action [for declaratory relief]." *Golden Eagle*, 103 F.3d at 754. Indeed, even "the potential for [a parallel] proceeding may suffice." *Id.* (citation omitted).

Moreover, "the dispositive question is not whether the pending state proceeding is 'parallel,' but rather, whether there was a procedural vehicle available to the insurance company in state court to resolve the issues raised in the action in federal court." *See Polido*, 110 F.3d at 1423. For example, in *Polido v. State Farm Mutual Auto Insurance Co.*, 110 F.3d 1418 (9th Cir. 1997), a consolidated action of two declaratory relief claims—one by an insurance company and the other by that company's insured—the insurance company argued "that the removed declaratory judgment action filed by [the insured] . . . [was] not 'parallel'" to an underlying state court tort action. *Id.* at 1420, 1423. The insurance company contended this was so because the issue in the federal court declaratory actions "involve[d] only contractual claims" as compared to the state court action which sounded in tort. *Id.* at 1423. Additionally, the insurance company argued that retaining jurisdiction was appropriate because it was not a party to the underlying state court action. *Id.* The Ninth Circuit rejected these arguments, holding that the fact that the federal declaratory judgment action and the underlying state court tort action involved different parties and legal issues did not necessarily weigh in favor of retaining jurisdiction because the declaratory action could have been resolved in the state court that was already familiar with the related underlying action. *See id.* at 1423 ("The record in this case unequivocally demonstrates that [the insurance company] could have obtained relief in . . . state court, because the merits of its contention that it is not liable under the terms of the policy were squarely before the state court in the declaratory relief action that [the insurance company] removed to the district court."). Consequently, the *Polido* Court remanded the case to the district court to determine whether it

12

1   should exercise its jurisdiction over the declaratory judgment claims, as the district court had not

2   previously considered this issue.  *Id.* at 1424.

3        While National Union is correct to point out that the *Kielty* Lawsuit and the instant case

4   involve different legal analyses and "will be litigated separately and sequentially, even if they

5   proceed in the same forum" as a result of the Stipulated Settlement  Opp'n at 4, this does not end

6   the Court's inquiry under the third *Brillhart* factor.  As noted *supra*, "differences in factual and

7   legal issues between the state and federal court proceedings are not dispositive because the insurer

8   'could have presented the issues that it brought to federal court in a separate action to the same

9   court that will decide the underlying tort action.'" *Polido*, 110 F.3d at 1423 (quoting *Karussos* 65

10  F.3d at 800).

11       Here, the Court finds that the state court—the forum where the related underlying action is

12  pending—is better situated to resolve this declaratory action.  The *Kielty* Lawsuit and the

13  declaratory judgment action before the Court stem from the same incident, Mr. Kielty's accident,

14  though the two cases will be resolved after differing factual and legal analyses.  The *Kielty* Lawsuit

15  sounds in tort and deals with an accident at a construction site; the instant case, in contrast, is an

16  insurance contract dispute and its resolution, pursuant to the settlement agreement between Advent

17  and Mr. Kielty, determines whether the *Kielty* Lawsuit proceeds or not.  It follows, then, that

18  National Union is correct to point out that the *Kielty* Lawsuit and the instant case "will be litigated

19  separately and sequentially, even if they proceed in the same forum."  Opp'n at 4.  However, this

20  does not end the Court's inquiry under the third *Brillhart* factor because, as noted *supra*,

21  "differences in factual and legal issues between the state and federal court proceedings are not

22  dispositive because the insurer 'could have presented the issues that it brought to federal court in a

23  separate action to the same court that will decide the underlying tort action.'" *Polido*, 110 F.3d at

24  1423 (quoting *Karussos* 65 F.3d at 800).

25       The state court's familiarity with the parties, the fact that this action is inextricably linked to

26  the *Kielty* Lawsuit, and the state court's greater institutional capacity to interpret state law in order

27  to issue a declaratory judgment all weigh in favor of remanding the case under the third *Brillhart*

28  factor.  Similar to the insurance company in *Polido*, National Union contends that this Court should

**United States District Court**
For the Northern District of California

13

United States District Court
For the Northern District of California

retain jurisdiction because the instant case "involves only contractual claims" and its involvement

in the underlying state court tort action came about as a result of the happenstance of National

Union having issued a worker's compensation policy that is unrelated to the dispute before the

state court.  But, as the *Polido* court indicated, it is within the district court's broad discretion under

28 U.S.C. § 2201(a) to consider the insurance coverage action's relation to the underlying state

court tort case and find that state court is the better forum for both related actions.  With this in

mind, the Court finds that the third *Brillhart* factor weighs in favor of remanding this case to state

court to allow the parties here and in the *Kielty* Action to resolve their entire dispute in California

courts, which, as noted *supra* Part IV.A, are best equipped to interpret California law and issue a

declaratory judgment.

### D.    Additional Factors

While the *Brillhart* factors represent the primary considerations the Court must weigh in

determining whether to remand the instant action, *Dizol*, 133 F.3d at 1225, they "are not

necessarily exhaustive," *Huth*, 298 F.3d at 803 (citing *Kearns*, 15 F.3d at 145 (Garth, J.,

concurring)).  As noted *supra* Part II, additional factors include:

> Whether the declaratory action will settle all aspects of the controversy; whether the
> declaratory action will serve a useful purpose in clarifying the legal relations in
> issue; whether the declaratory action is being sought merely for the purposes of
> procedural fencing or to obtain a "res judicata" advantage; or whether the use of a
> declaratory action will result in entanglement between the federal and state court
> systems.  In addition, the district court might also consider the convenience of the
> parties, and the availability and relative convenience of other remedies.

*Dizol*, 133 F.3d at 1225 n.5 (quoting *Kearns*, 15 F. 3d at 145 (Garth, J., concurring)).

None of the factors that courts weigh in addition to the *Brillhart* factors persuade the Court

to exercise its discretion to retain jurisdiction over this declaratory action.  First, the Court agrees

with National Union that there is no res judicata advantage to either party.  *See* Opp'n at 5.

Second, the Court does not find that Advent has engaged in "procedural fencing" by voluntarily

dismissing its breach of contract claim, as that dismissal resulted from an agreement between both

parties.  Third, the Court cannot conclude that there is "no risk" of entanglement between federal

and state court systems.  Because there is an underlying related state court case, and because this

1    Court's declaratory judgment ruling would require solely an analysis of California law, a risk of

2    entanglement is at least conceivable. *Cf. Hungerford*, 53 F.3d at 1019 ("[E]ven if the declaratory

3    judgment would clarify the nature of the legal relationship at issue, such clarification would only

4    come at the cost of increasing friction between state and federal courts, and would constitute an

5    improper encroachment on state court jurisdiction. . . . '[C]ourts should generally decline to assert

6    jurisdiction in insurance coverage and other declaratory relief actions presenting only issues of

7    state law during the pendency of parallel proceedings in state court.'" (citation omitted)).

8            Furthermore, the Court does not find that the factors of convenience of the parties and the

9    availability and convenience of other remedies support retaining jurisdiction.  National Union

10   argues that it would conserve judicial resources and be more convenient to the parties to remain in

11   federal court for two reasons: (1) the discovery process already has commenced in this case, and

12   (2) "[s]taying in federal court is axiomatically more convenient than returning to state court." *Id.*

13   With regard to National Union's first point, though the parties have conducted some discovery,

14   they will be able to utilize the discovery they have obtained in state court.  As for National Union's

15   second point, if it were more convenient to retain jurisdiction over a declaratory action simply

16   because the case is currently in federal court, convenience and judicial economy concerns would

17   never favor remanding a case.  Such a categorical stance is inconsistent with the broad discretion of

18   federal district courts to abstain from asserting jurisdiction over claims brought under the

19   Declaratory Judgment Act.

20           Finally, as for National Union's claim that this Court "has the same ability as the state court

21   'to settle all aspects of the controversy' and 'clarify[] the legal relations at issue,'" Opp'n at 5

22   (alteration in original), the Court is unpersuaded.  As discussed *supra* Part IV.A, California courts

23   are "equally, if not better equipped to decide" a question of California law. *See Hungerford*, 53

24   F.3d at 1018.  Furthermore, because the underlying related tort action is pending before the state

25   court while awaiting the result of this declaratory action, the state court's familiarity with the

26   underlying issues may facilitate a global settlement of this matter or, at the very least, streamline

27   the resolution of the declaratory action and the *Kielty* Action within the same court system.

28           **E.      Summary**

15

13-CV-00561-LHK
ORDER GRANTING MOTION TO REMAND

1    In *Huth*, the Ninth Circuit affirmed the district court's remanding of a case even though

2    only the first *Brillhart* weighed in favor of remanding.  In the instant case, the Court finds that both

3    the first and third *Brillhart* factors weigh in favor of remanding this case to state court.  With

4    regard to the first factor of avoiding the needless determination of state law issues, the Court finds

5    that, because this matter concerns solely the resolution of an insurance contract dispute—an issue

6    of state law, the California courts are better equipped to provide a declaratory judgment to resolve

7    this case.  With regard to the third factor of avoiding duplicative litigation, the Court finds that,

8    because a California court is adjudicating the related state court tort action whose outcome depends

9    in part on the result of this declaratory action, the state judicial system is better equipped to resolve

10   the global dispute.  As for the second *Brillhart* factor, the Court finds that it weighs in neither

11   party's favor.  Finally, the additional factors courts have considered in addition to the *Brillhart*

12   factors do not compel this Court to retain jurisdiction.  If anything, they provide further reason to

13   remand this case to state court.

14   Weighing the *Brillhart* factors as well as additional factors courts have considered in

15   determining whether to remand a declaratory action to state court, the Court finds that its discretion

16   is most appropriately exercised by remanding this matter to state court.

17   **V.    CONCLUSION**

18   For the foregoing reasons, the Court GRANTS Advent's Motion to Remand.  In light of

19   this Order, all pending motions are DENIED as moot.  The Clerk shall close the file.

20   **IT IS SO ORDERED.**

21

22   Dated: July 8, 2013

23   LUCY H. KOH
     United States District Judge

24

25

26

27

28